SWORMSTEDT (SMITH v.). See Case No. 13,112.

---

## Case No. 13,706.

### The SYBIL.

[Blatchf. Pr. Cas. 615.]¹

District Court, S. D. New York. Dec., 1864.

PRIZE—SEIZURE—PROBABLE CAUSE—COSTS.

Vessel and cargo acquitted, with costs, there having been no probable cause for their seizure.

In admiralty.

BETTS, District Judge. The above vessel and cargo were captured at sea, in the Gulf Stream, in longitude about 76° 52′ west, latitude 33° 18′ north, by the United States vessel of war Iosco, as prize of war, November 20, 1864, and sent to this port, in charge of a prize-master, for adjudication. A libel was here filed in this suit, December 1, and an attachment issued thereon returnable on the 20th of the same month, and such pro-

---

¹ [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

¹ [Reported by Samuel Blatchford, Esq.]

ceedings were taken in the cause that on the 7th of December instant, William Stewart, of Liverpool, appeared therein by his agent and attorney, Oliver K. King, and filed his claim and answer to the aforesaid libel, averring, in effect, the capture of the said vessel and her cargo to have been without lawful authority and wrongful, and attaching his test oath to that claim, demanding the discharge of the vessel from seizure in this action, with damages to the claimant because of her arrest. On the same day, Alfred T. Conklin, of the city of New York, appeared and filed his separate answer and claim in the cause, alleging that he is the consignee and owner of 20 bales of cotton, part of the cargo of said vessel seized as prize. His test oath is annexed to the claim and answer, declaring that he is solely interested in the aforesaid cotton, saving the interest which may appertain to Foulke & Wilkes, who are the shippers of it, and are residents of Matamoras, Mexico; and that the vessel was bound from Matamoras to New York. On the same day, Godfrey Knoop, of the city of New York, consignee and agent for the owners of 284 bales of cotton, part of the cargo of said schooner seized in this suit, filed a claim and answer therefor, attaching his test oath thereto, alleging that the said bales of cotton were (in designated parts) the property of Messrs. De Jersey & Co., resident of Manchester, in England, and of Messrs. Foulke & Wilkes, residents of Matamoras, in Mexico; and the answer and claim proceeds to deny that the said cotton was lawfully captured as prize, as alleged in the libel filed in this cause, or was subject to capture as prize; and charges that the claimants are entitled to damages for the seizure to which it has been subjected by such unlawful arrest. None of the answers or claims aver the port of departure or destination of the prize vessel or cargo, otherwise than as it is stated incidentally, in the claims filed, that the cargo of cotton was shipped from Matamoras, in a British ship, bound to New York.

The testimony in preparatorio, in the cause, was taken before the prize commissioners, December 2d and 3d, and the case, with all the proofs, was submitted to the court for decision on the 7th of December instant, without oral argument, or written briefs or points furnished by counsel on either side, and such submission was accepted by the court on the understanding that the cause stood defaulted on the minutes, and that the only point for consideration under the submission was whether the facts in evidence supplied probable cause supporting the default supposed to have been incurred by the claimants. The counsel for all parties were importunate that the case might be disposed of without delay, to save the accumulation of costs and damages, and, as the deposition of the master intimated that the vessel was seized off Wilmington, North Carolina, as he

supposed, under suspicion that the cargo on board had come from blockaded states, and as I observed discord in the testimony of two others of the witnesses as to the location of the Sybil adjacent to the Carolina shores at the time of her arrest, I regarded the course taken by the claimants in forbearing to contest the case upon the proofs as an acquiescence in the justness of the judgment upon nil dicit. The district attorney and the proctors for the claimants now apprising the court that such view was a misapprehension, and that the submission of the cause, with all the papers, was to be regarded by the court as intended by the parties to have the effect of placing the case in the same situation as if it had been formally contested, I immediately reopened the order, and proceeded to examine the case in the light of one duly and seriously controverted upon all the issues of law and fact propounded by the pleadings and proofs.

The vessel was American built, her name being the Eagle, and, as appears by her certificate of British registry executed at Nassau, N. P., April 28, 1863, she was there transferred to William Stewart, of Liverpool, England, by the acting registrar at Nassau, and was then named the Sybil. A certificate was indorsed on the registry, at the British consulate in New York, April 7, 1864, that Robert H. Ramsey was that day appointed master, in the room of William E. Askins. The present master was appointed to the command of the Sybil by O. K. King & Co., merchants, of New York, for the voyage upon which she was captured. Portions of the cotton laden on board belonged to that firm. The vessel sailed under the British flag, and had no other on board of her. The crew captured with the vessel was mostly shipped at New York. Two were shipped for the return voyage on the Rio Grande. The outward voyage was with a miscellaneous cargo from New York to Matamoras, and the return cargo, which was captured, was laden at Matamoras, destined to New York. There is no evidence given in the case showing that the cargo seized as prize consisted of articles contraband of war, or had evaded, or attempted to evade, a legal blockade, or was the property of the public enemy. The same course of trade had been followed by the vessel in voyages immediately preceding the one upon which she was arrested in this action—departing from the port of New York, with a lawful cargo, destined to Matamoras, Mexico, and returning, bound to New York, from Matamoras, or Bagdad, the discharge port in Mexico. In practice, the cotton was sent on board the vessel in lighters, to her anchorage at Bagdad, her place of lading and discharge in Mexican waters, at the mouth of the Rio Grande river. The vessel had proceeded directly to that place from New York, and was on her return voyage to New York, with no other papers or vouchers than the regular clearances given

at her ports of departure at each commencement of her voyage, the manifests, bills of lading, etc. Her cargo, shipped at Matamoras, was exclusively cotton, and there is no proof that any portion of it is enemy property. The proof is that the prize had not stopped at any port, after leaving the mouth of the river Rio Grande, until she was captured on her return voyage. The cotton was carried on freight. There is no other proof of its actual ownership than the bills of lading accompanying its assignment. The house of Foulke & Wilkes shipped the cargo from Matamoras, and were apparently natives of Germany.

The prize vessel had on board, when arrested, various letters addressed to individuals. They were not asked for from her by the captors, and the master of the captured ship testifies that he did not offer them to the captors, thinking that, as they in no way related to the vessel or her cargo, but were merely the correspondence of individuals from other vessels lying near the Sybil in Mexico, and intrusted to her for conveyance to their families or friends, they did not belong to her.

The voyage of the Sybil, previous to her last one, was from New York to Matamoras, with an assorted cargo of flour, sugar, corn, soap, raisins, hardware, &c. Her crew consisted of eight men,—the master, two mates, and five seamen, all shipped at New York, and most of them residents there. The voyage was from New York to Matamoras, and back to New York. She did not touch at any port on her return voyage to New York, except Hampton Roads, where she was taken after her capture as prize. She was seized about ten o'clock in the morning, in the Gulf Stream, a hundred miles or more off the coast of South or North Carolina. She was entering no port when arrested. She was steering for New York, and did not alter her course, or take any notice of the Iosco, when pursued by her, till she came alongside. She was sailing under English colors, and had no others on board. Every witness examined in preparatorio from the ship's company testifies with great apparent fairness as to the good conduct of the vessel on her voyage, and no testimony is submitted to the notice of the court impeaching the integrity of the whole course of the voyage, except what has been before alluded to as affording plausible ground of distrust—her running suspiciously near to blockaded ports. But I discern no legal cause for pronouncing that there is proof furnished amounting to probable cause for the seizure of the schooner because of her having evaded or attempted to violate the blockade.

There must be a decree of acquittal of the schooner and cargo, with costs.